STATE OF MAINE
CUMBERLAND, ss
SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-18-387 ✓

PIERCE ATWOOD, LLP,

Plaintiff

ORDER ON DEFENDANT'S
MOTION TO DISMISS

v.

ATLANTIC OPERATING AND
MANAGEMENT CORP., d/b/a THE
YANKEE CLIPPER INN, and
NATHANIEL SULLIVAN,

Defendants

Before the court is defendants Atlantic Operating and Management Corp., d/b/a The Yankee Clipper Inn and Nathaniel Sullivan's motion to dismiss plaintiff Pierce Atwood, LLP's complaint pursuant to M.R. Civ. P. 12(b)(2). For the following reasons, the motion is denied.

Factual Background

Plaintiff is a law firm and a Maine Limited Liability Partnership. (Compl. ¶ 1.) Plaintiff's principal place of business is 254 Commercial Street, Portland, Cumberland County, Maine. (Compl. ¶ 1.) Defendant Atlantic is a New Hampshire domestic company with a principal place of business in North Conway, New Hampshire. (Compl. ¶ 2.) Defendant Sullivan is an individual who resides in North Conway, New Hampshire. (Compl. ¶3.)

In April 2016, defendants contacted plaintiff about representing them in a legal dispute with Atlas Media Corp. and The Travel Channel, LLC. (Compl. ¶ 4.) Plaintiff agreed to represent the defendants in the dispute and they agreed to pay plaintiff's fees and costs. (Compl. ¶ 5.) The engagement letter identifies plaintiff's Portland office. (Compl. ¶ 7.) Defendant Sullivan dealt

1

REC'D CUMB CLERKS OFC
FEB 13 '19 PM3:05

with Attorney Minister at plaintiff's Portland office, sent checks to and telephoned that office, and appeared at that office on three occasions. (Minister Aff. ¶¶ 10-11,13-15, 18-20.)

During plaintiff's representation of defendants, plaintiff determined that the proper jurisdiction to resolve the dispute was Tennessee. (Sullivan Aff. ¶ 4); (Minister Aff. ¶ 9.)¹ Plaintiff hired a law firm in Tennessee to represent defendants in the litigation. (Sullivan Aff. ¶ 4); (Minister Aff. ¶ 9.) Defendants' dispute with Atlas and Travel Channel was resolved. (Sullivan Aff. ¶ 4.)

Plaintiff alleges it billed defendants for $99,583.81 for services and costs but has been paid only $14,584.93 in spite of repeated demands. (Compl. ¶¶ 6-9.) Plaintiff claims that defendants owe $113,866.43 for legal services, costs, and late fees. (Compl. ¶ 12.)

Procedural Background

On August 27, 2018, plaintiff filed a three-count complaint: count I, breach of contract; count II, account annexed; and count III, quantum merit. On October 30, 2018, defendants moved to dismiss plaintiff's complaint for lack of personal jurisdiction. M.R. Civ. P. 12(b)(2). On November 19, 2018, plaintiff filed an opposition to defendants' motion.

Discussion

Maine's long-arm statute allows for jurisdiction "over nonresident defendants to the fullest extent permitted by the due process clause of the United States Constitution, 14th amendment." 14 M.R.S. § 704-A(1) (2017). Maine has valid jurisdiction under due process when "(1) Maine has a legitimate interest in the subject matter of the litigation; (2) the defendant, by his or her conduct, reasonably could have anticipated litigation in Maine; and (3) the exercise of jurisdiction

---

¹ Court may consider affidavits when deciding a Rule 12(b)(2) motion. See Dorf v. Complastik Corp., 1999 ME 133, ¶ 13, 735 A.2d 984.

2

by Maine's courts comports with traditional notions of fair play and substantial justice." Fore v. Benoit, 2012 ME 1, ¶ 7, 34 A.3d 1125. The burden is on plaintiff to demonstrate parts one and two of the test. Id. at 10. If plaintiff makes that demonstration, "the burden shifts to the defendant to demonstrate the negative as to the third part." Id. The allegations and affidavits are construed in plaintiff's favor and plaintiff must make a prima facie showing that jurisdiction exists. Dorf, 1999 ME 133, ¶ 14, 735 A.2d 984.

I.    Maine's Legitimate Interest in Subject Matter of the Litigation

Defendants argue that they did not reach out to Maine and therefore Maine has no interest in providing its citizen redress from noncitizens in this case. (Defs.' Mot. Dismiss 5-6.) Plaintiff argues Maine has a legitimate interest to protect its business from noncitizens who enter into and then subsequently breach contracts with Maine businesses. (Pl.'s Opp'n to Defs.' Mot Dismiss 5-6.)

The analysis of whether Maine has a legitimate interest must go beyond Maine's "interest in providing its citizens with a means of redress against noncitizens." Commerce Bank & Trust Co. v. Dworman, 2004 ME 142, ¶ 15, 861 A.2d 662 (quotation marks omitted). Legitimate interests include protecting Maine "industries, the safety of its workers, or the location of witnesses and creditors within its border." Id. (quotation marks omitted).

Plaintiff is a Maine Limited Liability Partnership. (Compl. ¶ 1.) Potential witnesses in this proceeding are located in Maine. (Minister Aff. ¶¶ 13-15, 18-22.) Maine has an interest in "preventing debtors from using our boundaries as a shelter to shield their persons . . . from process and creditors." Dworman, 2004 ME 142, ¶ 15, 861 A.2d 662. Maine has a legitimate interest in the subject matter of this litigation.

3

## II. Reasonably Anticipate Litigation in Maine

Defendants argue they did not maintain sufficient contacts to avail themselves purposefully of the privilege of conducting business in Maine by failing to pay bills to a firm that maintains a presence in both states. (Defs.' Mot. Dismiss 6-10.) Plaintiff argues that defendants entered into an ongoing contract with plaintiff and had sufficient minimum contacts with Maine to reasonably anticipate litigation in Maine. (Pl.'s Opp'n to Defs.' Mot. Dismiss 7-9.)

To determine whether a defendant could have reasonably anticipated litigation in Maine, the court assesses whether the defendant had "sufficient contacts with [Maine] to make it reasonable . . . to require the [defendant] to defend the particular suit which is brought there." Cavers v. Houston McLane Co., 2008 ME 164, ¶ 24, 958 A.2d 905 (quotation marks omitted). A defendant has sufficient minimum contacts with Maine if "the defendant purposefully avails itself of the privilege of conducting activities within [Maine], thus invoking the benefits and protections of [Maine's] laws." Id. (quotation marks omitted). The law court held that the following contacts satisfy the minimum contacts requisite for Maine to establish jurisdiction over an out of state defendant: "(1) the activities of the defendant have been directed at the forum's residents; (2) the defendant deliberately engages in significant activities in the forum; or (3) the defendant creates continuing obligations between itself and residents of the forum." Id.

Although defendant Sullivan initially dealt with plaintiff at its Portsmouth office when he first hired the plaintiff "years ago," defendants' dealings with plaintiff in this case took place in Portland. (Sullivan Aff. ¶ 10; Minister Aff. ¶¶ 6-8, 10-11,13-15, 18-20.) Defendants' relationship with plaintiff constituted a "continuing contractual obligation necessary to support the exercise of jurisdiction," which "requires ongoing contact between the parties with the expectation of conducting future business." Murphy v. Keenan, 667 A.2d 591, 595 (Me. 1995). Additionally,

4

"an employment contract that is signed in a state, by a person living in that state, even if it is to be performed elsewhere, puts the obligations of the contract within the reach of the power that the state of residence may constitutionally exercise without violating the due process clause." Cavers, 2008 ME 164, ¶ 26, 958 A.2d 905. Plaintiff's attorney signed an engagement letter in Portland, Maine that began the plaintiff's working relationship with defendants. (Minister Aff. ¶¶ 6-8); (Pl.'s Ex. B.) Defendants have sufficient minimal contacts with Maine.

III.     Traditional Notions of Fair Play and Substantial Justice

Defendants argue that because the plaintiff held itself out as a "New England firm" and the defendants are located in a New England state, fairness dictates that a court action between them should be in the defendants' home state. (Defs.' Mot Dismiss 10-11.) Plaintiff argues that the defendants do not address whether litigating in Maine would violate "traditional notions of fair play and substantial justice" because defendants do not address that the core of this proceeding is the defendants' failure to pay a Maine firm they had hired and that the location of the witnesses and evidence are in Maine. (Pl.'s Opp'n to Defs.' Mot. Dismiss 12-13.)

Maine's exercise of jurisdiction in this case comports with "traditional notions of fair play and substantial justice." Defendants have presented no reasons as to why it is unreasonable to require them to litigate in Maine. See Fore, 2012 ME 1, ¶ 9, 34 A.3d 1125; Estate of Hoch v. Stifel, 2011 ME 24, ¶ 28, 16 A.3d 137; see also Harriman v. Demoulas Supermarkets, Inc., 518 A.2d 1035, 1039 (Me. 1986) (defendant made "no attempt to demonstrate that it would be significantly more inconvenienced by being required to appear and defend in Maine rather than in Massachusetts.").

The entry is

Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is DENIED.

Date:   February 14, 2019

Nancy Mills
Justice, Superior Court

Entered on the Docket: 2 21-19

6